UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREAT AMERICAN E&S INSURANCE COMPANY,

Plaintiff,

-V-

ARTHUR J. GALLAGHER & CO., ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, LLC and GALLAGHER IP SOLUTIONS LLC,

Defendants.

Case No. 1:25-cv-05406

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................7

FACTUAL BACKGROUND ....................................................................................8

I. THE PROGRAM AND RELEVANT CONTRACTS. ....................................................8

II. THE PAYMENT DEFAULTS AND GREAT AMERICAN'S LITIGIATION. ..............11

LEGAL STANDARD ...........................................................................................12

ARGUMENT .......................................................................................................13

I. THE DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO ACTUAL CONTROVERSY, AND BECAUSE THE CLAIM IS DUPLICATIVE AND INADEQUATELY PLED. ..........................................................13

A. There Is No Case or Controversy Between Gallagher and Great American. .......13

B. Alternatively, the Court Should Decline to Exercise Jurisdiction Over Great American's Declaratory Judgment Claim. ..........................................................16

C. The Declaratory Judgment Claim Is Duplicative of the Breach of Contract Claim. ...........................................................................................................18

D. Great American Has Not Plausibly Alleged a Claim for Declaratory Judgment. .19

II. THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED AS PREMATURE AND INSUFFICIENTLY PLED. .......................................................................20

A. The Breach of Contract Claim Is Not Ripe. ..........................................................21

B. Great American Fails to Plausibly Allege a Breach of Contract. ..........................22

III. THE PROFESSIONAL NEGLIGENCE CLAIM SHOULD BE DISMISSED BECAUSE GREAT AMERICAN FAILS TO PLAUSIBLY ALLEGE THAT GALLAGHER OWED—LET ALONE BREACHED—DUTIES OUTSIDE OF THE CONTRACTS AT ISSUE. .............................................................................................................25

IV. THE NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE ECONOMIC LOSS DOCTRINE AND INSUFFICIENTLY PLED. ..............................................................................26

CONCLUSION ....................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967) ........ 12

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
57 F.4th 85 (2d Cir. 2023) ........ *passim*

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005) ........ 27

*Allied World Surplus Lines Ins. Co. v. Elamex USA, Corp.*,
No. 23-CV-9992 (LJL), 2024 WL 2212948 (S.D.N.Y. May 16, 2024) ........ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 12, 13, 24, 25

*Asian Vegetable Rsch. & Dev. Ctr. v. Inst. of Int'l Educ.*,
944 F. Supp. 1169 (S.D.N.Y. 1996) ........ 25

*Barbagallo v. Marcum LLP*,
No. 11-CV-1358, 2012 WL 1664238 (E.D.N.Y. May 11, 2012) ........ 15, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 12, 13, 24, 25

*Brock v. Servpro*,
183 N.E.3d 491 (Ohio Ct. App. 2022) ........ 22

*Charter Oak Fire Ins. Co. v. New York Marine & Gen. Ins. Co.*,
559 F. Supp. 3d 244 (S.D.N.Y. 2021) ........ 14

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
70 N.Y.2d 382 (1987) ........ 25

*Deutsche Bank Sec., Inc. v. Rhodes*,
578 F. Supp. 2d 652 (S.D.N.Y. 2008) ........ 26

*Dresser-Rand Co. v. Ingersoll Rand Co.*,
No. 14 CIV. 7222 KPF, 2015 WL 4254033 (S.D.N.Y. July 14, 2015) ........ 15, 16

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
261 F. Supp. 2d 293 (S.D.N.Y. 2003) ........ 12

*EMR (USA Holdings), Inc. v. Goldberg*,
No. 18 CIV. 07849 (ER), 2019 WL 5537878 (S.D.N.Y. Oct. 25, 2019) ....21

*Firemen's Ins. Co. of Newark, N.J. v. Antol*,
471 N.E.2d 831 (Ohio Ct. App. 1984)....21

*Fischer & Mandell, LLP v. Citibank, N.A.*,
632 F.3d 793 (2d Cir. 2011)....22

*FSP, Inc. v. Societe Generale*,
No. 02 CV 4786 (GBD), 2003 WL 124515 (S.D.N.Y. Jan. 14, 2003)....15

*Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*,
No. 06-CV-1117 GTS/DEP, 2010 WL 1257943 (N.D.N.Y. Mar. 25, 2010)....15

*GFE Glob. Fin. & Eng'g Ltd. v. ECI Ltd. (USA), Inc.*,
291 F.R.D. 31 (E.D.N.Y. 2013)....22

*Lombardo v. Dr. Seuss Enters., L.P.*,
No. 16 CIV. 9974 (AKH), 2017 WL 1378413 (S.D.N.Y. Apr. 7, 2017)....7

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)....12

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007)....9

*Negrete v. Citibank, N.A.*,
187 F. Supp. 3d 454 (S.D.N.Y. 2016)....25

*New York & Presbyterian Hosp. v. Tishman Const. Co.*,
180 Misc. 2d 193 (N.Y. Sup. Ct. 1999)....26

*Katzman v. Helen of Troy Texas Corp.*,
No. 12 CIV. 4220 PAE, 2012 WL 3831745 (S.D.N.Y. Aug. 28, 2012)....14

*Kavanagh v. Zwilling*,
578 F. App'x 24 (2d Cir. 2014)....12

*Palin v. New York Times Co.*,
940 F.3d 804 (2d Cir. 2019)....24

*Penn Mut. Life Ins. Co. v. Wolk*,
739 F. Supp. 2d 387 (S.D.N.Y. 2010)....20

*Pers. Watercraft Prod. SARL v. Robinson*,
No. 16-CV-9771 (AJN), 2017 WL 4329790 (S.D.N.Y. Sept. 1, 2017) ....................18, 19

*Rand v. Travelers Indem. Co.*,
637 F. Supp. 3d 55 (S.D.N.Y. 2022)....................20

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)....................27

*Sandoor Alex Telegdi v. A.M.R. Servs. Corp.*,
No. 97 CV 1177 RJD, 2000 WL 264333 (E.D.N.Y. Jan. 21, 2000)....................26

*Sawicki v. GameStop Corp.*,
966 N.Y.S.2d 447 (2d Dep't 2013)....................15

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
248 F. Supp. 3d 428 (S.D.N.Y. 2017)....................27

*Sommer v. Fed. Signal Corp.*,
79 N.Y.2d 540 (1992) ....................26

*Specialty Nat. Ins. Co. v. Eng. Bros. Funeral Home*,
606 F. Supp. 2d 466 (S.D.N.Y. 2009)....................15

*Summit Props. Int'l, LLC v. Ladies Pro. Golf Ass'n*,
No. 07 CIV. 10407(LBS), 2010 WL 2382405 (S.D.N.Y. June 14, 2010)....................18, 19

*TD Waterhouse Inv. Servs., Inc. v. Integrated Fund Servs., Inc.*,
No. 01 CIV. 8986, 2003 WL 42013 (S.D.N.Y. Jan. 6, 2003)....................25

*Texas v. United States*,
523 U.S. 296 (1998)....................14

*Trump on Ocean, LLC v. State*,
913 N.Y.S.2d 792 (3d Dep't 2010)....................22, 23

*Weisblum v. Prophase Labs, Inc.*,
88 F. Supp. 3d 283 (S.D.N.Y. 2015)....................26

*Westport Ins. Corp. v. Hamilton Wharton Grp., Inc.*,
No. 10 CIV. 2188 RMBTHK, 2011 WL 724737 (S.D.N.Y. Feb. 23, 2011)....................14

**Constitutions**

Constitution of the United States, Article III....................13

**Statutes**

Declaratory Judgment Act, 28 U.S.C. § 2201.....13

Pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), Defendants Arthur J. Gallagher & Co., Arthur J. Gallagher Risk Management Services, LLC, and Gallagher IP Solutions LLC (collectively, "Gallagher") hereby move to dismiss Counts I through IV of the Complaint (ECF 1) brought by Plaintiff Great American E&S Insurance Company ("Great American").

## INTRODUCTION

Great American is an insurance company. For years, it provided insurance coverage for risky loan transactions, and for years, it enjoyed substantial premiums in exchange for the risks it undertook. But when some of those transactions failed and claims were made against the policies Great American issued, it refused to pay up. Instead, Great American denied coverage and initiated multiple arbitration proceedings against its insureds, seeking declarations that no coverage is owed under the policies. And now, desperate to avoid losses at any costs, Great American has prematurely sued Gallagher, who merely served as the broker for the transactions.

Great American vaguely alleges that Gallagher provided misleading information to Great American prior to the policies' issuance and failed to perform unspecified contractual duties after the policies issued. Based on these allegations, Great American asserts breach of contract and negligence claims and seeks a declaration that, *if* Great American is found liable in the coverage arbitrations at some later date, Gallagher must indemnify Great American for its losses, including defense costs.

This Court should dismiss Counts I through IV of the Complaint.[1] First, the declaratory judgment claim does not present an actual controversy. Great American's request for a declaration

[1] This motion does not seek to dismiss the Complaint's specific performance claim (Count V). Unless the Court orders otherwise, Gallagher will answer this remaining claim after the disposition of this motion pursuant to Rule 12(a)(4)(A); *see also Lombardo v. Dr. Seuss Enters. L.P.*, No. 16 Civ. 9974, 2017 WL

concerning Gallagher's indemnification obligations is premature because there has been no liability finding against Great American in any of the underlying arbitrations. And while Great American wants Gallagher to pay its defense costs for the arbitrations, Gallagher's duty to defend is no broader than its duty to indemnify and thus also cannot be determined at this time. Moreover, even if the Court found the declaratory judgment claim presented an actual controversy (which it should not), judicial economy and other factors warrant abstention. The declaratory judgment claim also is subject to dismissal because it is duplicative of the breach of contract claim, and because Great American's bare-bones pleading is based on legal conclusions rather than well-pled factual allegations. Great American has not come close to plausibly alleging that Gallagher engaged in any conduct that would implicate the indemnification and defense obligations at issue.

For similar reasons, the Court should dismiss Great American's breach of contract claim. The claim is premature, and it also fails on the merits because Great American has not plausibly alleged any contractual breach. As to Great American's two negligence claims, not only are they insufficiently pled, but they fail as a matter of law because they are barred by the economic loss doctrine and Great American has not alleged any duty separate from Gallagher's contractual duties. For all of these reasons, the Court should dismiss Counts I-IV of the Complaint with prejudice.

## FACTUAL BACKGROUND

### I. THE PROGRAM AND RELEVANT CONTRACTS.

This dispute arises out of a "Program" in which private lenders ("Noteholders") made loans to start-up companies (the "Program Companies"). Compl. ¶¶ 1, 21. The Program Companies

---

1378413, at *3 (S.D.N.Y. Apr. 7, 2017) (a timely motion to dismiss some claims extends the time to answer all claims).

provided the assets of their businesses—in particular, their valuable intellectual property—as collateral for the loans. *Id.* at ¶ 21. UMB Bank, National Association ("UMB Bank") acted as trustee for the Noteholders. *Id.* at ¶ 22. As part of every transaction in the Program, Great American issued an insurance policy to UMB Bank as the named insured (the "Program Policies"). *Id.* at ¶¶ 23-24. The policies provided that Great American would insure the "residual value loss" in the event of default. *Id.* at ¶ 23. In other words, if a Program Company defaulted, and if its collateral was insufficient to pay off the outstanding debt to the Noteholders, Great American would pay the difference. *Id.*

PIUS Limited, LLC ("PIUS") acted as the "producer" or "broker" for the transactions pursuant to a Producer Agreement and Underwriting Authority Addendum with Great American. *Id.* at ¶ 41; *see also* Exhibit A to McAdam Declaration (the "Producer Agreement"); Exhibit B to McAdam Declaration (the "Underwriting Authority Addendum").[2] The Producer Agreement provided PIUS with non-exclusive authority to "solicit, receive, and evaluate applications" from potential Program Companies. *See* Ex. A at § 2(a)(i). The Underwriting Authority Addendum also delegated underwriting authority to PIUS, but only for risks less than $10 million. Ex. B, Appendix A, §§ II. For any risk greater than $10 million, PIUS did not have underwriting authority, and instead simply referred the potential transaction to Great American, for Great American to ask questions and make its own decision regarding whether to accept or decline the risk.[3] *Id.* Ex. B at Appendix A, § III. The Producer Agreement also contains mutual indemnification obligations

---

[2] In ruling on a motion to dismiss, the Court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

[3] While the Complaint does not disclose it, every single transaction at issue in this dispute constituted a risk greater than $10 million, meaning Great American had sole underwriting authority for the transactions.

between PIUS and Great American. *See* Ex. A at § 16. For purposes of this motion, the relevant portion of the Producer Agreement's indemnification provision is as follows:

> [PIUS] will indemnify, hold harmless and defend [Great American] … against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees … arising out of, or related to any (i) breach or non-fulfillment of any representation, warranty or covenant under this Agreement by [PIUS], its employees, agents or contractors; or (ii) any negligent or more culpable act or omission of [PIUS], its employees, agents or contractors.

Compl. ¶ 43; Ex. A at § 16.

Another company, Newlight Capital LLC ("Newlight") also participated in the Program transactions. As part of each transaction, Newlight entered into Disbursement Monitoring Agreements ("DMA") with Great American, UMB Bank, and the Program Companies. *See* Exhibit C to McAdam Declaration (exemplar "DMA"). Each DMA authorized Newlight to perform certain "Monitoring Services" "in such manner and at such times as Newlight determines *in its sole discretion* to be advisable." Compl. ¶ 45; Ex. C at § 2(a)-(b) (emphasis added). Similarly, in the event of default, Newlight was authorized to perform certain "Collateral Enforcement Services." Compl. ¶ 45; Ex. C at § 2(b). Just as with the Monitoring Services, the DMAs provided that Newlight was to perform the Collateral Enforcement Services "in such manner and at such times (if any) as Newlight determines *in its sole discretion* to be advisable." *Id.* (emphasis added). The DMAs also contained an indemnification provision providing that Newlight would indemnify, defend, and hold harmless Great American for losses caused by:

> (A) any negligent act or omission by Newlight or its members, officers, directors, employees, representatives, contractors, consultants, or agents related to or arising out of this Agreement or (B) a breach by Newlight of any of its agreements contained in this Agreement; provided, that neither Newlight nor Insurer shall have any obligation to any Indemnified Party to the extent directly caused by or directly resulting from the willful misconduct or gross negligence of such Indemnified Party.

*See* Compl. ¶ 48; Ex. C at § 13.

On November 8, 2022, Gallagher acquired the assets of both PIUS and Newlight. Compl. ¶¶ 28, 30. Great American alleges that, as a result of the acquisition, Gallagher assumed the business and obligations of PIUS and Newlight, including the obligations set forth in the Producer Agreement and the DMAs. *See id.* at ¶ 31.[4]

## II. THE PAYMENT DEFAULTS AND GREAT AMERICAN'S LITIGATION.

After a long period of success, several of the Program Companies defaulted on their repayment obligations to the Noteholders. Compl. ¶ 25. Great American alleges that other, unspecified Program Companies have threatened to default. *Id.* For each of the defaulted Program Companies, the collateral was insufficient to cover the repayment obligations to the Noteholders, so UMB Bank made claims under the Program Policies. *Id.* at ¶¶ 3; 26. Rather than pay what it owed, Great American denied coverage and commenced "at least three" arbitrations against UMB Bank (hereinafter, the "Underlying Arbitrations"). *Id.* at ¶¶ 4; 27. Great American alleges little detail regarding the Underlying Arbitrations, but it does assert there is no coverage owed to UMB Bank because UMB Bank failed to comply with its "independent obligations under the policies." *Id.* at ¶ 29 n.1.

Rather than waiting for any of the pending arbitrations to run their course, Great American filed this action against Gallagher. Great American vaguely alleges that "Gallagher's evaluation of the financial condition and creditworthiness of the various Program Companies proved to be grossly incomplete and inaccurate." Compl. ¶ 26. According to Great American, the Summary Submissions provided by Gallagher contained "incomplete and inaccurate facts, misstatements, or

[4] For ease of reference—and because the Complaint generally refers to purported obligations owed by "Gallagher," this memorandum will generally refer to PIUS, Newlight, and each of the defendant entities as "Gallagher," and will distinguish between the entities as needed.

omissions," which "induce[d] Great American into agreeing to the issuance of the various Program Policies." *Id.* at ¶¶ 51, 54. Great American further alleges that after the policies issued, Gallagher failed to "perform the services required in Sections 2, 5 and 6 of the various [DMAs]." *Id.* at ¶ 61.

Great American "maintains that it is not liable to [UMB Bank] under its Program Policies," but it contends that *if*, at some unspecified time in the future, there are arbitration awards entered against Great American, Gallagher "*would be* liable to Great American for any arbitration awards in favor of [UMB Bank] because of the acts or omissions of Gallagher and/or its employee(s)." *Id.* at ¶¶ 62-64 (emphasis added).

## **LEGAL STANDARD**

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To establish subject matter jurisdiction, a plaintiff must show that a case is ripe for adjudication. *See Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003) ("Ripeness is jurisdictional in nature and therefore properly considered on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules.").

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept well-pleaded facts as true, it need not accept bald assertions or legal conclusions. *Kavanagh v. Zwilling*, 578 F. App'x 24 (2d Cir. 2014) (citing *Twombly*, 550 U.S. at 555-56). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## ARGUMENT

### I. THE DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO ACTUAL CONTROVERSY, AND BECAUSE THE CLAIM IS DUPLICATIVE AND INADEQUATELY PLED.

Great American seeks a declaration regarding "the scope of the defense, indemnification and hold-harmless obligations owed by Gallagher to Great American." Compl. ¶ 73. But there is no case or controversy between Gallagher and Great American because the Underlying Arbitrations for which Great American seeks indemnification and defense remain pending (or in some cases, have not commenced), and there has been no finding of liability against Great American. Alternatively, if the Court finds a case or controversy exists, it should nonetheless decline to exercise jurisdiction. And even if the Court does exercise jurisdiction over the declaratory judgment claim, it should dismiss the claim because it is duplicative of Great American's breach of contract claim, and because Great American has failed to plausibly allege entitlement to declaratory relief.

#### A. There Is No Case or Controversy Between Gallagher and Great American.

Pursuant to Article III of the Constitution, federal courts may decide only actual "Cases" or "Controversies." U.S. Const. art. III, §§ 1-2. Likewise, the Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration," but only "[i]n a case of actual controversy within its jurisdiction." *See* 28 U.S.C. § 2201(a). The Declaratory Judgment Act does not expand the jurisdiction of the federal courts, and thus, "the relevant inquiry for the Declaratory Judgment Act's case-of-actual-controversy prerequisite is coextensive with the analysis applicable to the case-or-controversy standard embodied in Article III." *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d

Cir. 2023) (cleaned up). To establish an actual controversy, a plaintiff must demonstrate a "substantial controversy … of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Id.* (emphasis in original) (citation and quotation omitted).

Great American's declaratory judgment claim does not present an actual controversy. Great American seeks a declaration on the "scope of the [alleged] defense, indemnification and hold harmless obligations owed by Gallagher to Great American." Compl. ¶ 73. But any dispute regarding Gallagher's purported indemnification obligations cannot be decided unless and until there is a finding of liability against Great American in the underlying arbitrations. Indeed, Great American maintains that it should prevail in the underlying arbitrations. If that were to happen, Great American would not be entitled to any indemnification whatsoever. In other words, Great American's claim for indemnification rests solely "'upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Katzman v. Helen of Troy Texas Corp.*, No. 12 CIV 4220 PAE, 2012 WL 3831745, at *3 (S.D.N.Y. Aug. 28, 2012) (quoting *Texas v. United States,* 523 U.S. 296, 300 (1998) (citation omitted)).

For this reason, courts in the Second Circuit have not hesitated to dismiss declaratory judgment actions based on claims of indemnification where liability has not yet been imposed upon the potential indemnitee. *See, e.g.*, *Charter Oak Fire Ins. Co. v. New York Marine & Gen. Ins. Co.*, 559 F. Supp. 3d 244, 253 n.6 (S.D.N.Y. 2021) (dismissing at summary judgment stage a declaratory judgment claim relating to indemnification because the indemnitee's "liability, if any, has yet to be established"); *Westport Ins. Co. v. Hamilton Wharton Grp., Inc.*, 10 CIV 2188, 2011 WL 724737, at *4 (S.D.N.Y. Feb. 23, 2011) (finding declaratory judgment claim concerning the duty to indemnify as premature because this duty "'necessarily depend[ed]' on the resolution of one or more issues to be determined in the [underlying action]"), *aff'd* 483 F. App'x 599 (2d Cir.

2012); *Specialty Nat. Ins. Co. v. Eng. Bros. Funeral Home*, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009) (granting summary judgment on declaratory judgment claim as premature because "[indemnitor's] duty to indemnify [indemnitee] rests on facts to be determined in each of the underlying lawsuits" and "because there has been no determination of liability in the underlying litigation"); *FSP, Inc. v. Societe Generale*, No. 02 CV 4786 (GBD), 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003) ("Claims concerning indemnification obligations … are not ripe for adjudication until liability has been imposed upon the party to be indemnified."); *see also Admiral Ins. Co.*, 57 F.4th at 94 ("[T]he duty to indemnify is triggered by a determination of liability.").

Great American's request for a declaration concerning Gallagher's purported defense obligations fares no better. Declaratory judgment actions regarding an insurer's duty to defend may be ripe before a finding of liability because an insurer's duty to defend is significantly broader than its duty to indemnify. *See, e.g.*, *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, No. 06-cv-1117 GTS/DEP, 2010 WL 1257943, at *6 (N.D.N.Y. Mar. 25, 2010) ("[I]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action."). But the same is not true of a non-insurer's duty to defend. In the non-insurance context, a party's defense obligations (if any) are presumed to be *no broader* than the party's indemnification obligations. *See Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 14 Civ. 7222 (KPF), 2015 WL 4254033, at *6-7 (S.D.N.Y. Jul. 14, 2015); *Barbagallo v. Marcum LLP*, No. 11 Civ. 1358 (JBW), 2012 WL 1664238, at *5 (E.D.N.Y. May 11, 2012); *Sawicki v. GameStop Corp.*, 966 N.Y.S.2d 447, 450 (2d Dep't 2013) ("[S]ince the … defendants are not insurers, their duty to defend was no broader than their duty to indemnify.").

Because Gallagher's alleged duty to defend and duty to indemnify are co-extensive, it would be similarly premature to adjudicate the duty to defend claim. *See Dresser-Rand*, 2015 WL

4254033, at *8-9 (dismissing declaratory judgment claim because "[plaintiffs'] entitlement to indemnification is not evident, and the issue of whether [defendant] must provide real-time defense reimbursements, as [p]laintiffs contend they must, is equally entangled in the unripe issue of indemnification"); *Barbagallo,* 2012 WL 1664238, at *5 ("Since [defendant] is not an insurer, his duty to defend is coextensive with his duty to indemnify.").

It is also important to note that Great American has not cited any contractual language requiring that defense costs be paid immediately as soon as they are incurred by Great American. Because "[r]ipeness is peculiarly a question of timing," this too underscores that Great American's claim is not ripe. *See Dresser-Rand*, 2015 WL 4254033, at *8 (finding declaratory judgment claim for defense costs was not ripe and noting that "even if, at some later date, [defendant] is required to reimburse [plaintiff's] defense costs associated with the [Underlying] Action, the [contract] does not necessarily provide for reimbursement *now,* in real time as the [Underlying] Action proceeds").

In short, Great American's request for declaratory relief is dependent upon contingent future events that may never occur. The declaratory judgment claim is, therefore, not ripe, and this Court should dismiss the claim for lack of jurisdiction.

**B. Alternatively, the Court Should Decline to Exercise Jurisdiction Over Great American's Declaratory Judgment Claim.**

If the Court were to find that the declaratory judgment claim presents an actual controversy (which it should not), the Court should nevertheless decline to exercise jurisdiction over that claim. Even "when a declaratory judgment would serve a useful purpose in clarifying and settling the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding, district courts retain broad discretion to decline jurisdiction" under the Declaratory Judgment Act. *Admiral Ins. Co.*, 57 F.4th at 99 (cleaned up).

District courts considering whether to abstain from a declaratory judgment action consider the following six factors, "to the extent they are relevant in a particular case":

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Allied World Surplus Lines Ins. Co. v. Elamex USA Corp.*, No. 23-cv-9992 (LJL), 2024 WL 2212948, at *5 (S.D.N.Y. May 16, 2024) (quoting *Admiral Ins. Co.*, 57 F.4th at 94).

In this case, the relevant factors weigh in favor of declining jurisdiction. A declaratory judgment in this action would not serve a useful purpose in clarifying or settling the legal issues involved while the Underlying Arbitrations remain pending, nor would it finalize the controversy. Indeed, while the Underlying Arbitrations remain pending, it is impossible to determine whether Great American has suffered any loss that could potentially be subject to indemnification. And because it appears Great American is seeking a declaration related to arbitrations that *have not yet commenced* (*see* Compl. ¶¶ 25, 27, 67), even a finding of liability in one arbitration would not allow the Court to provide any finality with respect to these contingent—and potentially non-existent—disputes.

Judicial efficiency and judicial economy also weigh heavily in favor of abstention. Great American asserts the "[a]llegations in the arbitrations include that borrowing companies were undercapitalized, that the value of their collateral was overstated, that the loans were not adequately monitored and, when the borrowing companies defaulted on required payments under the loans, the collateral was not properly marketed for sale to mitigate losses." Compl. ¶ 3. The

resolution of those issues in the Underlying Arbitrations could bear on and significantly streamline this dispute. Indeed, findings against Great American on those issues would likely have a *res judicata* or collateral estoppel effect in future litigation between Great American and Gallagher, and thus significantly narrow the issues to be decided in a later court proceeding. Moreover, since the Underlying Arbitrations relate, at least in part, to UMB Bank's "independent obligations" to Great American, (*see* Compl. ¶ 29 n. 1), it is also possible that the Underlying Arbitrations turn on independent obligations owed by UMB Bank rather than the alleged obligations owed by Gallagher, which could impact the alleged duty to indemnify and defend asserted in this case. And as noted above, if Great American prevails in the Underlying Arbitrations, it could mean that the Court need not decide any dispute whatsoever. In all events, judicial economy is best served by declining to exercise jurisdiction.

In sum, even if this Court believes a case or controversy that is ripe for adjudication exists, the Court's resolution of the declaratory judgment claim would not finalize or resolve the dispute between Gallagher and Great American. And the Court would be in a much better position to efficiently resolve the dispute *after* the Underlying Arbitrations have concluded. For these reasons, if the Court finds jurisdiction exists with respect to the declaratory judgment claim, it should exercise its broad discretion to decline jurisdiction over the claim.

**C. The Declaratory Judgment Claim Is Duplicative of the Breach of Contract Claim.**

The Court also should dismiss the declaratory judgment claim because it is duplicative of Great American's breach of contract claim. Under well-established Second Circuit law, "if a claim for declaratory judgment seeks a declaration of the same rights as will be determined under an action for breach of contract, it must be dismissed as duplicative of the breach of contract claim." *Pers. Watercraft Prod. SARL v. Robinson*, No. 16-CV-9771 (AJN), 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (cleaned up) (citation omitted); *see also Summit Props. Int'l, LLC v.*

*Ladies Pro. Golf Ass'n*, No. 07 CIV. 10407(LBS), 2010 WL 2382405, at *6 (S.D.N.Y. June 14, 2010) (dismissing declaratory judgment claim as duplicative because "[t]he issue of [defendant's] alleged breach, and the parties' obligations to each other, will be resolved in the context of the breach of contract claims").[5]

In this case, Great American's declaratory judgment claim is entirely duplicative of its breach of contract claim. Great American asserts that Gallagher's "defense, indemnification and hold-harmless obligations" are "set out in the various contracts at issue," and Great American "seeks a declaration of the scope of the defense, indemnification and hold-harmless obligations owed by Gallagher to Great American" under those contracts. Compl. ¶¶ 69, 73. The breach of contract claim is a mirror image: it asserts that Gallagher's "defense, indemnification and hold-harmless obligations" are "set out in the various contracts at issue," and it "seeks actual damages for all costs within the scope of Gallagher's defense, indemnification and hold harmless obligations" under those contracts. *Id.* ¶¶ 75, 80. It is clear that the declaration Great American seeks "is a necessary antecedent to a finding of liability under the breach-of-contract claim." *Pers. Watercraft Prod. SARL*, 2017 WL 4329790, at *11. Accordingly, the declaratory judgment claim should be dismissed as duplicative.

**D. Great American Has Not Plausibly Alleged a Claim for Declaratory Judgment.**

If the Court reaches the merits of the declaratory judgment claim, it should dismiss the

[5] Some courts have characterized the duplicative nature of a declaratory judgment claim as a reason to decline jurisdiction under the factors set forth in Section I.B, *supra*. *See, e.g.*, *Summit Props. Int'l, LLC*, 2010 WL 2382405, at *6 ("The Court of Appeals for the Second Circuit has held that a declaratory judgment action should be entertained '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' Where the declaratory judgment is duplicative of the breach of contract claim, neither of these purposes is served.") (citation omitted).

claim pursuant to Rule 12(b)(6) because Great American has not stated a plausible claim to relief. To withstand a Rule 12(b)(6) motion, a plaintiff must "allege[] facts plausibly showing" an entitlement to declaratory relief. *See Penn Mut. Life Ins. Co. v. Wolk*, 739 F. Supp. 2d 387, 395 (S.D.N.Y. 2010) (analyzing declaratory judgment claim under the *Iqbal/Twombly* plausibility standard). Because the Declaratory Judgment Act is procedural in nature, a declaratory judgment claim is "derivative of [Great American's] substantive claims and dependent on whether [the] underlying claims proceed." *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 72-73 (S.D.N.Y. 2022) (dismissing declaratory judgment claim to the extent it was based on a dismissed substantive claim). The declaratory judgment claim in this case should be dismissed because Great American has not plausibly alleged facts to support the indemnification and defense obligations it seeks to enforce.

As best as Gallagher can interpret Great American's vague pleading, Great American's claim for declaratory judgment is premised upon the notion that Gallagher breached its contracts with Great American and/or engaged in negligent or more culpable conduct with respect to Great American. *See* Compl. ¶¶ 64-67. As explained in more detail in the sections that follow, Great American has not plausibly alleged that Gallagher breached any contractual obligation owed to Great American or that Gallagher acted negligently in any respect. *See* Sections II-III, *infra*. Accordingly, if the Court chooses to exercise jurisdiction over the declaratory judgment claim, the Court should nevertheless dismiss the claim under Rule 12(b)(6).

## II. THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED AS PREMATURE AND INSUFFICIENTLY PLED.

Great American's breach of contract claim (Count II) should be dismissed because it is premature and, even if it were ripe, it fails to state a plausible claim to relief. Rather than well-pled

facts, the Complaint consists of nothing more than vague and conclusory assertions regarding Gallagher's alleged breaches, requiring dismissal pursuant to Rule 12(b)(6).

**A. The Breach of Contract Claim Is Not Ripe.**

Great American's breach of contract claim is not ripe. The Producer Agreement is construed under Ohio law (*see* Ex. A, at ¶ 26), while the DMAs allegedly are construed under New York law.[6] *See* Ex. C, at ¶ 15. Under both Ohio and New York law, Great American's claim for contractual indemnification is not ripe until Great American has suffered a loss in the Underlying Arbitrations. *See EMR (USA Holdings), Inc. v. Goldberg*, No. 18 CIV 08949 (ER), 2019 WL 5537878, at *5 (S.D.N.Y. Oct. 25, 2019) ("It is black letter law in New York that an indemnification claim does not arise until the party seeking indemnification has an out-of-pocket loss to be reimbursed."); *Firemen's Ins. Co. of Newark, N.J. v. Antol*, 471 N.E.2d 831, 833 (Ohio Ct. App. 1984) ("If the contract provides indemnity against loss, the alleged indemnitor becomes liable and the cause of action accrues when the person seeking indemnity suffers a loss."). As explained above, there has been no finding of liability against Great American in the Underlying Arbitrations, and thus Great American's claim for indemnification has not yet accrued. As also explained above, because Gallagher is not an insurer, its duty to defend Great American is no broader than its duty to indemnify, and thus, that aspect of the claim also is not ripe for adjudication. *See* Section I.A, *supra*.

[6] Great American does not even explicitly state that these are the contracts Gallagher is accused of breaching, instead referring vaguely to "the various contracts at issue." Compl. at ¶ 75. For purposes of this motion, Gallagher assumes these are the contracts at issue, as they are the only contracts referenced in the Complaint. Further, while Great American acknowledges that the DMAs utilized in each transaction contained at least some differences, *see, e.g.*, Compl. ¶ 48 (alleging that Gallagher's indemnification obligations arise "in most instances in paragraph 13" of the applicable DMAs), Gallagher assumes for purposes of this motion to dismiss that each DMA contained an identical choice of law provision.

### B. Great American Fails to Plausibly Allege a Breach of Contract.

Great American also fails to adequately plead its breach of contract claim. To state a claim for breach of contract under both New York and Ohio law, a plaintiff must allege (1) the existence of a contract; (2) the performance of the contract by plaintiff; (3) breach of the contract by defendant; and (4) damages. *See, e.g.*, *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *Brock v. Servpro*, 183 N.E.3d 491, 497-98 (Ohio Ct. App. 2022). In this case, Great American's claim is premised on its allegations that Gallagher "owes Great American certain defense, indemnification and hold harmless obligations," that "Gallagher's performance is due and payable," and that Gallagher "has refused to perform," thus breaching the contracts. Compl. ¶¶ 75-80. But under the Producer Agreement and DMAs, Gallagher could not possibly owe any of these obligations to Great American (and thus could not have breached the agreements), unless Great American's losses were caused by Gallagher's breach of the agreements at issue,[7] or its negligent or more culpable conduct. *See* Compl. ¶¶ 43, 48. Great American has not plausibly alleged either.

Starting with its obligations under the Producer Agreement, Gallagher's alleged breaches are set out in Paragraphs 49-60 of the Complaint. But in these paragraphs, Great American fails to allege what provision(s) of the contract were supposedly breached. Rather, the Complaint makes only general allegations that Gallagher provided incomplete and misleading information to Great American. The failure to identify "a particular provision" in the contract "that has been contravened" is fatal to a breach of contract claim. *See GFE Glob. Fin. & Eng.'g Ltd. v. ECI Ltd. (USA), Inc.*, 291 F.R.D. 31, 34 (E.D.N.Y. 2013); *see also Trump on Ocean, LLC v. State*, 79 A.D.3d 1325, 1326 (3d Dep't 2010) ("breach of contract cause of action fails as a matter of law in

[7] Under the Producer Agreement, Gallagher would have to breach a specific "representation, warranty, or covenant" to give rise to a claim for indemnification. *See* Compl. at ¶ 43.

the absence of any showing by claimant that a specific provision of the [contract] was allegedly breached").

What's more, each of the allegations regarding the Producer Agreement amounts to a conclusion rather than a fact. For example, Great American alleges that Gallagher "provided an incomplete, inaccurate, and misleadingly favorable picture of the financial condition of various Program Companies," Compl. ¶ 50, but it does not identify what information was provided or how it was supposedly misleading. Indeed, the Complaint does not even identify the companies that Gallagher was purportedly analyzing. Similarly, Great American alleges that "[t]he incomplete and inaccurate facts, misstatements, or omissions presented to Great American in the Summary Submissions cannot be reconciled with the facts discovered after various claims were submitted." *Id.* at ¶ 54. Once again, Great American does not identify any of the "facts" that were supposedly provided to Great American, nor does it provide any of the later-discovered "facts" purportedly demonstrating that Great American was misled. And while the Complaint identifies some statements by Gallagher concerning its review of the Program Companies and the conclusions drawn from that review (*id.* at ¶¶ 55-56), Great American alleges no facts supporting a plausible inference that these statements were false or misleading. Instead, it merely presents the Court with its conclusion—that Gallagher's statements were "inaccurate" (*id.* at ¶ 55)—untethered to any factual support.

Once again, it is important to note that Great American's breach of contract claim covers at least three separate transactions (*see id.* at ¶ 27), and possibly more. *See id.* at ¶ 25 (alleging "various" companies have defaulted and others have threatened to do so). Each of these transactions involved different Program Companies, different Noteholders, and different submissions to Great American. But Great American has not identified the companies at issue in

each transaction, has provided no details with respect to Gallagher's analysis of those Program Companies, and has not alleged any facts to support its conclusory assertions that Gallagher's work was inadequate and that its statements were misleading. The complete lack of factual content in Great American's pleading renders patently implausible its claim that Gallagher breached the Producer Agreement or acted negligently with respect to its obligations under that agreement. *See Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) (a claim is not plausible unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting *Iqbal*, 556 U.S. at 678)).

As to Gallagher's alleged obligations under the DMAs, the Complaint's allegations are even more deficient. They consist only of a single, conclusory sentence: "Gallagher did not perform the services required in Sections 2, 5 and 6 of the various [DMAs] in the manner required or befitting the services described and required in good faith." Compl. ¶ 61. This is precisely the type of "[t]hreadbare recital[] of the elements of a cause of action" that does not suffice to state a plausible claim. *Iqbal*, 556 U.S. at 678. This allegation provides no facts supporting what, exactly, Gallagher "failed" to do. It is merely "a legal conclusion couched as a factual allegation" that the Court need not—and should not—accept. *Id.* This bare-bones pleading is especially egregious because the DMAs provided that Newlight could perform the monitoring and enforcement services at issue "in such manner and at such times as Newlight determine[d] in its sole discretion to be advisable." *See* Compl. ¶ 45. Great American has alleged no facts supporting an inference that Newlight failed to provide the services required under the DMAs, let alone that any such failure was outside of Newlight's broad discretion.

In the end, to state a plausible claim for breach of contract, Great American is required to plead sufficient factual allegations to "raise a right to relief above a speculative level." *Twombly*,

550 U.S. at 555. The factual content of the Complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. By contrast, Great American's Complaint contains nothing more than conclusory assertions and threadbare pleading, and accordingly, the breach of contract claim should be dismissed.

## III. THE PROFESSIONAL NEGLIGENCE CLAIM SHOULD BE DISMISSED BECAUSE GREAT AMERICAN FAILS TO PLAUSIBLY ALLEGE THAT GALLAGHER OWED—LET ALONE BREACHED—DUTIES OUTSIDE OF THE CONTRACTS AT ISSUE.

In Count III, Great American brings a claim for "negligent provision of professional services." This claim should be dismissed because Great American has alleged only economic loss, meaning it can only recover, if at all, in contract rather than tort. Moreover, Great American has failed to plausibly allege any negligent conduct by Gallagher.

New York courts have long held that "'economic loss is not recoverable under a theory of negligence.'" *TD Waterhouse Inv. Servs., Inc. v. Integrated Fund Servs., Inc.*, No. 01 CIV. 8986, 2003 WL 42013, at *12 (S.D.N.Y. Jan. 6, 2003) (quoting *Asian Vegetable Research & Dev. Center v. Institute of Int'l Educ.*, 944 F. Supp. 1169, 1181 (S.D.N.Y.1996)). Accordingly, "'a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.'" *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 471 (S.D.N.Y. 2016), *aff'd* 759 F. App'x 42 (2d Cir. 2019) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987)). This independent legal duty "'must spring from circumstances extraneous to'" the contract. *Id.*

Here, Great American does not allege such an independent legal duty exists, and in fact, concedes the legal duties alleged arise out of the contracts at issue. The Complaint states that "[p]ursuant to the Producer Agreement and the Underwriting Addendum as well as the Disbursement Monitoring Agreements, Gallagher agreed to provide certain professional services

for Great American" and therefore "Gallagher owed Great American a duty of care in connection with its provision of professional services." Compl. ¶¶ 82-83. This negligence theory is not permitted under New York law. *See Deutsche Bank Securities, Inc. v. Rhodes*, 578 F. Supp. 2d 652, 671 (S.D.N.Y. 2008) (quoting *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551 (1992)) ("[M]erely alleging that the breach of contract duty arose from a lack of due care will not transform a simple breach of contract into a tort.").[8] For this reason alone, Count III should be dismissed.

Moreover, even if this cause of action was not barred by New York law, Great American's conclusory allegations do not support a plausible allegation that Gallagher was negligent in any respect. *See* Section II.B, *supra*. Count III should be dismissed for this reason as well.

## IV. THE NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE ECONOMIC LOSS DOCTRINE AND INSUFFICIENTLY PLED.

Great American's negligent misrepresentation claim is barred by the economic loss rule. Under the economic loss doctrine, a plaintiff who has "suffered economic loss, but not personal or property injury," may not recover in tort. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y 2015). This doctrine applies to negligent misrepresentation claims. *Id.* (dismissing negligent misrepresentation claim where plaintiffs alleged only economic loss). For this reason alone, Great American's negligent misrepresentation claim should be dismissed with prejudice.

[8] While certain "Professionals" have an independent legal duty extraneous from a contract under New York law, Great American has made no such allegation here. And in any event, courts addressing the issue have uniformly held that insurance agents and brokers like Gallagher are not considered "Professionals" for purposes of a professional negligence claim. *See Sandoor Alex Telegdi v. A.M.R. Servs. Corp.,* No. 97 CV 1177 RJD, 2000 WL 264333, at *2 (E.D.N.Y. Jan. 21, 2000) (holding that insurance agents and brokers (like Gallagher) are not "professionals" as the licensing requirements for insurance brokers or agents do not involve a prolonged course of specialized instruction or study with a degree in an advanced field of science or learning, and an applicant for an insurance agent's or broker's license need not take a single course); *New York and Presbyterian Hosp. v. Tishman Const. Co.*, 180 Misc.2d 193, 196 (N.Y. Sup. Ct. 1999) (noting that an insurance broker is "not even arguably involved in the practice of one of the traditionally recognized professions").

Even if the claim were not barred by the economic loss rule, it is insufficiently pled. To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that (1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied on the information given. *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 452 (S.D.N.Y. 2017) (Oetken, J.). Moreover, where a negligent misrepresentation claim sounds in fraud, it is subject to Rule 9(b)'s heightened pleading standard. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005). Great American's claim is subject to Rule 9(b) and falls woefully short of that standard.

This Court has adopted a "case-by-case approach" to determine whether a negligent misrepresentation claim is subject to Rule 9(b). *Silvercreek Mgmt., Inc.*, 248 F. Supp. 3d at 453. A claim "sounds in fraud" and is subject to the heightened pleading standard when the "wording and imputations of the complaint are classically associated with fraud." *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004). Here, Great American alleges that Gallagher provided it with a "misleadingly favorable picture of the financial condition of the Program Companies" and "inaccurate facts, misstatements, and omissions" that "were provided to induce Great American …." Compl. ¶¶ 50-52. Great American also (vaguely) contends that there was information about the Program Companies "known to Gallagher at the time of underwriting, but withheld from Great American." *Id.* at ¶ 58. Such allegations sound in fraud and, therefore, Great American is required to meet Rule 9(b)'s heightened pleading standard.

As noted above, Great American's bare-bones pleading fails to plausibly allege that Gallagher committed any negligent conduct. Because Great American has failed to plausibly allege any negligence by Gallagher, it follows that it has not come close to alleging the who, what, when,

where, and why required under Rule 9(b). It has identified a handful of statements made in "Summary Submissions," but it has provided no detail as to when those statements were made, to whom they were made, the context in which they were made, or why the statements were "misrepresentations" at all. The Complaint's non-specific allegations about Gallagher's purportedly "incorrect and inaccurate representations to Great American as to the financial condition of the Program Companies" and as to "the value of the collateral of the Program Companies," (Compl. ¶ 88), do not suffice. For these reasons as well, the negligent misrepresentation claim should be dismissed.

## CONCLUSION

For all the foregoing reasons, Counts I through IV of Great American's Complaint should be dismissed with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

be served within seven (7) days after receipt of such answering papers.

Dated: New York, New York
January 30, 2026

*<u>/s/ Maegan McAdam</u>*

Maegan McAdam
RILEY SAFER HOLMES & CANCILA LLP
810 Seventh Avenue, Suite 3505
New York, New York 10019
Telephone: (212) 660-1025
mmcadam@rshc-law.com

Ronald S. Safer (*pro hac vice* forthcoming)
Eli J. Litoff (*pro hac vice* forthcoming)
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn St., Suite 2200
Chicago, Illinois 60603
(312) 471-8700
rsafer@rshc-law.com
elitoff@rshc-law.com

*Attorneys for Defendants Arthur J. Gallagher & Co., Arthur J. Gallagher Risk Management Services, LLC, and Gallagher IP Solutions LLC*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this memorandum of law is in compliance with the word limit set forth in 7(c) of the Local Civil Rules. According to the word processing program used to prepare this memorandum, the total number of words in the memorandum, including footnotes but excluding the caption, table of contents, table of authorities, and signature block, is 7088.

Dated: January 30, 2026

*/s/ Maegan McAdam*
Maegan McAdam